UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

EDWARD PETERS,

          Plaintiff,

v.                                       Case No:  2:21-cv-468-JLB-NPM

LISA I. WOODS, as Successor
Trustee of the Edward B. Grimes
Residuary Trust and the Esther G.
Grimes Residuary Trust,

          Defendant.

_____

## ORDER

This matter comes before the Court on Defendant Lisa Woods's Motion to Dismiss for Lack of Personal Jurisdiction under Federal Rules of Civil Procedure 12(b)(2).  (Doc. 8.)  Plaintiff Edward Peters has filed a Response in which he requests that if personal jurisdiction is not found, the case should be transferred to the Western District of Arkansas.  (Doc. 10.)  Ms. Woods has filed a Reply, agreeing that if the case is not dismissed for lack of personal jurisdiction, it should be transferred to the Western District of Arkansas.  (Doc. 13.)  For the following reasons, the Middle District of Florida cannot exercise personal jurisdiction over Ms. Woods.  The Court finds that Ms. Woods's Motion to Dismiss (Doc. 8) is **GRANTED IN PART**, and the case is therefore **TRANSFERRED** to the Western District of Arkansas.

## I.    Background

On April 1, 1989, Edward Grimes and Esther Grimes each executed

substantively identical Living Trust Agreements, both of which provided for the creation of a Residuary Trust upon the death of both parties.  (Doc. 1-1 at ¶ 5.1; Doc. 1-2 at ¶ 5.1.)  The Trusts were created in Illinois.  (Id.)  Both Living Trust Agreements state that upon the death of both grantors, Sally Grimes Peters will serve as Successor Trustee of the Residuary Trusts, and upon Ms. Peters's death, her daughter, Ms. Woods, will serve as Trustee.  (Doc. 1-1 at ¶ 5.5, ¶ B(1); Doc. 1-2 at ¶ 5.5; 12, ¶ B(1).)  Edward Grimes, Esther Grimes, and Sally Grimes Peters have all since passed, leaving Ms. Woods as the Successor Trustee of both Trusts.  (See Doc. 1 at ¶¶ 14–16.)

The Living Trust Agreements provide that Ms. Woods has a fiduciary duty to distribute the assets of both Residuary Trusts to Ms. Peters's living descendants, per stirpes.  (Doc. 1-1 at ¶ E; Doc. 1-2 at ¶ E.)  Ms. Woods and her brother, Mr. Peters, are the sole living descendants of Ms. Peters, entitling them to 50% each of the assets of both Residuary Trusts.  (Doc. 1 at ¶ 18–19.)

Ms. Woods is a resident of Arkansas, and Mr. Peters is a resident of Florida. (Doc. 8 at 2.)  Neither Trust owns any property or has any assets located in Florida, nor has Ms. Woods ever administered either Trust in Florida.  (Doc. 8-1 at ¶ 7.)

Mr. Peters brings this action alleging that Ms. Woods breached her fiduciary duty to Mr. Peters by failing to distribute any assets from, or provide any accountings for, either Residuary Trust to Mr. Peters.  (Doc. 1 at ¶¶ 23–27.)  Mr. Peters also alleges that Ms. Woods has wrongfully deprived Mr. Peters of 50% of the assets of both Residuary Trusts and converted said assets to her own use.  (Doc. 1 at

¶¶ 28–33.)  Ms. Woods has moved to dismiss, arguing that the Middle District of Florida cannot exercise personal jurisdiction over her.  (Doc. 8.)  Alternatively, if personal jurisdiction is not found, both parties consent to transfer to the Western District of Arkansas.  (Doc. 10 at 5–7; Doc. 13 at 5.)

## II.    Standard of Review

When considering a motion to dismiss for lack of personal jurisdiction, a court must accept the facts alleged in the plaintiff's complaint as true, to the extent that they are not contradicted by the defendant's affidavits.  See Morris v. SSE, Inc., 843 F.2d 489, 492 (11th Cir. 1988).  Where the plaintiff's evidence and the defendant's evidence conflict, all reasonable inferences must be construed in favor of the plaintiff.  See Stubbs v. Wyndham Nassau Resort and Crystal Palace Casino, 447 F.3d 1357, 1360 (11th Cir. 2006); Molina v. Merritt & Furman, 207 F.3d 1351, 1356 (11th Cir. 2000).  Where the defendant makes a showing of the long-arm statute's inapplicability, "the plaintiff is required to substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and not merely reiterate the factual allegations in the complaint."  Polski Linie Oceaniczne v. Seasafe Transport A/S 795 F.2d 968, 972 (11th Cir. 1986).

## III.    Personal Jurisdiction

Determining whether personal jurisdiction can be exercised over a non-resident defendant involves a two-part inquiry.  First, the Court must determine whether the state's long-arm statute confers jurisdiction over the defendant.  Internet Solutions Corp. v. Marshall, 557 F.3d 1293, 1295 (11th Cir. 2009).  Next,

the Court must determine "whether the exercise of jurisdiction comports with due process" under the Fourteenth Amendment.  <u>Republic of Panama v. BCCI Holdings (Lux.) S.A.</u>, 119 F.3d 935, 942 (11th Cir. 1997).  "Federal courts are duty bound to avoid a constitutional question if answering the question is unnecessary to the adjudication of the claims at hand," <u>PVC Windoors, Inc. v. Babbitbay Beach Const., N.V.</u>, 598 F.3d 802, 807 (11th Cir. 2010).  As such, the Court will begin by considering whether Florida's long-arm statute provides the Middle District of Florida with personal jurisdiction over Ms. Woods.

### A. Florida's Long-Arm Statute

Mr. Peters argues that the Court has specific personal jurisdiction over Ms. Woods under the tortious act provision of the Florida long-arm statute.  <u>See</u> Fla. Stat. § 48.193(1)(a)(2).  Section 48.193(1)(a)(2) provides that a person may be subject to the personal jurisdiction for "committing a tortious act within this state," as follows:

> (1)(a) A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:
>
>  . . .
>
> 2. Committing a tortious act within this state.

<u>Id.</u>

Noting a split among Florida's district courts of appeal, and the absence of a

controlling decision by Florida's Supreme Court,[1] the Eleventh Circuit has
instructed that the tortious act provision of the Florida long-arm statute should be
construed broadly, "apply[ing] to defendants committing tortious acts outside the
state that cause injury in Florida." Posner v. Essex Ins. Co., Ltd., 178 F.3d 1209,
1216–17 (11th Cir. 1999) (citing then Fla. Stat. § 48.193(1)(b)).  Further, "[a] motion
to dismiss a tort claim for lack of personal jurisdiction under Florida's Long-Arm
Statute does not require a full-scale inquiry into whether the defendant committed
a tort." Brennan v. Roman Catholic Diocese of Syracuse N.Y., Inc., 322 F. App'x
852, 855 (11th Cir. 2009).  Where the plaintiff has alleged a tort, and the record is in
dispute as to the truth of the accusation, the Court will construe the jurisdictional
facts in the light most favorable to the plaintiff.  Future Tech. Today, Inc. v. OSF
Healthcare Sys., 218 F.3d 1247, 1250 (11th Cir. 2000).

Here, Mr. Peters's allegations, if true, are sufficient to support his claim that
Ms. Woods (1) breached her fiduciary duty to Mr. Peters by failing to provide
accountings for, or distribute the assets of, the Edward B. Grimes and Esther G.
Grimes Residuary Trusts; and (2) converted the assets of those trusts to her own
use.  (Doc. 1 at 5, ¶¶ 24–25; 6, ¶¶ 30–31.)  While Ms. Woods's conduct giving rise to
the breach and conversion claims occurred, indisputably, within the state of

---

[1] "We do not decide the broader issue of whether injury alone satisfies the
requirement of section 48.193(1)(b), as that issue is not the basis for this Court's
jurisdiction.  However, we note that the federal courts that have addressed this
issue, although acknowledging the confusion among Florida's district courts, have
adopted a broad construction of section 48.193(1)(b), holding that the commission of
torts out of state that cause an injury to an in-state resident satisfies Florida's long-
arm statute."  Wendt v. Horowitz, 822 So.2d 1252, 1253 n.2 (Fla. 2002).

Arkansas where Ms. Woods is domiciled and has been managing the Trusts, Mr. Peters, a Florida citizen, alleges that he was injured by Ms. Woods's conduct in Florida.  (Doc. 8-1 at 2, ¶¶ 2, 7; Doc. 1 at 5, ¶ 27; <u>id.</u> at 7, ¶ 33.)  Because there is no dispute as to the place of Mr. Peters's residence throughout all relevant periods, Mr. Peters's allegations establish a prima facie case of personal jurisdiction.  <u>See</u> <u>Posner</u>, 178 F.3d at 1215.  The Court therefore concludes that an arguable basis for personal jurisdiction exists under section 48.193(1)(a)(2) of Florida's long-arm statute for Mr. Peters's breach of fiduciary duty and conversion claims.[2]

## B. Due Process Clause of the Fourteenth Amendment

While Florida's long-arm statute, broadly construed under the Eleventh Circuit's binding precedent, arguably applies to Ms. Woods, jurisdiction is not proper under the Fourteenth Amendment's Due Process Clause, which limits a state's power to hail a defendant into its courts.  Under the Due Process Clause, the defendant must have such "contacts" with the forum state that "the maintenance of the suit" in that forum "does not offend traditional notions of fair play and

---

[2] There are a number of intermediate courts of appeal cases in which the court found that the long-arm statute applied to an out of state defendant alleged to have caused injury in Florida.  <u>See, e.g.</u>, <u>Wood v. Wall</u>, 666 So.2d 36, 40 (Fla. 1st DCA 1994) (finding that allegations of intentional tortious acts by defendants in their respective states of residence but targeted at a Florida resident triggered the Florida long-arm statute); <u>Allerton v. State Dep't of Ins.</u>, 635 So.2d 36, 40 (Fla. 1st DCA 1994) (holding that the Florida long-arm statute applied to a Florida resident who was "injured by the intentional misconduct of a nonresident corporate employee expressly aimed at him."); <u>Dean v. Johns</u>, 789 So.2d 1072, 1077 (Fla. 1st DCA 2001) (finding that an out of state doctor committed a tort in Florida for the purposes of long-arm jurisdiction, even though he was not present for the plaintiff's treatment, because the plaintiff's injuries occurred in Florida and the Alabama doctor directed reports into the state for the purpose of treating the plaintiff.).

substantial justice." <u>Int'l Shoe Co. v. Wash.</u>, 326 U.S. 310, 316–17 (1945) (quotation omitted). The crux of this formulation is the extent of "the defendant's relationship to the forum State." <u>Bristol-Myers Squibb Co. v. Super. Ct. of Cal.</u>, 137 S. Ct. 1773, 1779 (2017).

A court can have specific personal jurisdiction over a defendant who is a non-resident of the State if she has "purposefully availed" herself of the forum state's privileges and benefits. <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 475 (1985). Further, the defendant's contacts must not be "random, isolated or fortuitous," but rather, must arise from the defendant's own choices. <u>Keeton v. Hustler Magazine, Inc.</u>, 465 U.S. 770, 774 (1984).

The Supreme Court has repeatedly emphasized the importance of the defendant's autonomous decision-making in the context of the "minimum contacts" analysis. <u>See e.g.</u>, <u>Helicopteros Nacionales de Colombia, S.A. v. Hall</u>, 466 U.S. 408, 417 (1984) (explaining that the "unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction"); <u>see also</u> <u>Walden v. Fiore</u>, 571 U.S. 277, 285 (2014) ("[T]he plaintiff cannot be the only link between the defendant and the forum. Rather it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him"). Critically, the analysis looks to "the defendant's contacts with the forum State itself, not the defendant's contracts with persons who reside there." <u>Id.</u> at 284. Finally, the plaintiff's claims "must arise out of or relate

- 7 -

to the defendant's contacts" with the forum.  <u>Bristol-Myers,</u> 137 S. Ct., at 1780 (quotation omitted).  That is, the underlying controversy must be in some way related to the forum State, rendering it subject to the forum State's regulations.  <u>Id.</u>

Ms. Woods contends that the Court does not have specific personal jurisdiction over her because she has not purposefully availed herself of Florida's benefits.  (Doc. 8 at 6.)  The Court agrees.  The "central concern of the inquiry into personal jurisdiction" is "the relationship among the defendant, the forum, and the litigation," and here, no such relationship exists.  <u>Shaffer v. Heitner</u>, 433 U.S. 186, 204 (1977).  There is no conceivable connection between Ms. Woods and the state of Florida that she, herself created.  As outlined above, Ms. Woods is not a resident of Florida, and the Residual Trusts at issue own no property in Florida, have never been administered in Florida, and were not created in Florida.  Rather, Ms. Woods's contacts with the state of Florida hinge exclusively on her relationship with Mr. Peters, who happens to reside here.  It is axiomatic that the plaintiff cannot be the sole connection between the defendant and the forum.  <u>Walden</u>, 571 U.S. at 287; <u>Burger King</u>, 471 U.S., at 478; <u>Kulko v. Super. Ct. of Cal.</u>, 436 U.S. 84, 93 (1978); <u>Rush v. Savchuk</u>, 444 U.S. 320, 332 (1980).  Indeed, that is the situation here—Mr. Peters is the only link between Ms. Woods and the state of Florida.  For this reason, this Court does not have specific personal jurisdiction over Ms. Woods.

A brief comment is warranted on one argument presented by Mr. Peters.  Namely, he argues that the Court has specific jurisdiction over Ms. Woods because she "should have reasonably anticipated being hailed into Florida" given that her

alleged tortious conduct was "directed at a resident of the forum." (Doc. 10 at 4). This is a significant stretch that the case law simply does not support. As the Supreme Court held in <u>Walden</u>, "Such reasoning improperly attributes a plaintiff's forum connections to the defendant and makes those connections 'decisive' in the jurisdictional analysis." 571 U.S. at 289 (citing <u>Rush</u>, 444 U.S. at 332 (explaining that an approach which "shift[s] the focus of the inquiry from the relationship among the defendant, the forum, and the litigation to that among the plaintiff, the forum, [ ], and the litigation . . . is forbidden by <u>International Shoe</u> and its progeny")). As Mr. Peters would have it, if he, by chance, lived in Alaska or New York, Ms. Woods would be subject to the jurisdiction of those states as her alleged torts would affect Mr. Peters there. It offends notions of due process and fair play to effectively hold Ms. Woods hostage to the laws of whichever state in which Mr. Peters happens to reside.

Mr. Peters further contends that Ms. Woods is subject to the Court's jurisdiction because she has the requisite minimum contacts with the state of Florida. (Doc. 10 at 4). The Court disagrees.

Intentional contacts with the forum are the <u>sine qua non</u> for a non-resident tortfeasor to be subject to the jurisdiction of a forum state. <u>Walden</u>, 571 U.S. at 287. Courts have generally understood this requirement as demanding, at minimum, a "link between the defendant's local activities and the plaintiff's injuries." <u>Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.</u>, 141 S. Ct. 1017, 1034 (Gorsuch, J. concurring).

Here, Ms. Woods has engaged in no local activities, which could plausibly be affiliated with Mr. Peters's alleged injuries.  Mr. Peters argues that Ms. Woods has "conducted business in Florida by, among other things, freezing Florida bank accounts and communicating with Florida healthcare providers in connection with the parties' father," (Doc. 10 at 4), but these actions are wholly unrelated to the conduct complained of here—namely, Ms. Woods's administration of the Residual Trusts.  Accordingly, the Court does not have personal jurisdiction over Ms. Woods.

## IV.    Transfer to the Western District of Arkansas

Both parties have agreed that if personal jurisdiction is not found in the Middle District of Florida, the case may be transferred to the Western District of Arkansas ("A.R.W.D.").  The Court agrees that transfer is appropriate.  Although this Court lacks jurisdiction, it can transfer the case to a court in which it could have been brought originally.  28 U.S.C. § 1631.  Here, this requirement is easily satisfied because Ms. Woods is domiciled in the A.R.W.D.  See 28 U.S.C. § 1391(b)(1).  Further, transfer to that federal district is justified "in the interest of justice," as provided under section 1631, given that the Residual Trusts have been involved in litigation in Arkansas since 2019.  (Doc. 8-1 at 2, ¶ 6).  It is therefore likely that most of the important witnesses, relevant documents, and sources of proof will be located in the A.R.W.D., which seems quite clearly to be the geographic locus of operative facts.  Further, a third-party complaint in that litigation was already removed to the A.R.W.D., so that court can be presumed to have familiarity with at least some of the factual basis giving rise to the action before this Court.

(Doc. 10-1 at 2, ¶ 8).  Based on the totality of the circumstances, transfer to the A.R.W.D. is therefore appropriate.

### V.     Conclusion

For the foregoing reasons, it is **ORDERED**:

1. Defendant's Motion to Dismiss (Doc. 8) is **GRANTED IN PART.**

2. The Clerk of the Court is **DIRECTED TO TRANSFER** this action to the United States District Court for the Western District of Arkansas.

3. The Clerk of the Court is **DIRECTED** to terminate all deadlines, deny any pending motions as moot, and close this file.

**ORDERED** in Fort Myers, Florida on February 10, 2022.

JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE